IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LEIGHANN TUCK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:12-cv-01090 ) Senior Judge Haynes ) |
| SUNCREST HEALTH CARE, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, Leighann Tuck, filed this action under 42 U.S.C. § 12117 of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA") and 42 U.S.C. § 1981(a) against the Defendant, Suncrest Health Care, Inc. Plaintiff's claims arise out of her termination that she contends was discriminatory because she suffers from Lyme disease, that qualifies as a disability under the ADA, for which she was not offered a reasonable accommodation. Plaintiff also alleges that the Defendant retaliated against her for exercising her rights under the FMLA for the intermittent leave that she required due to her medical condition.

Before the Court is Defendant's motion for summary judgement (Docket Entry No. 43), contending that: (1) Plaintiff's termination was due to a reduction in force that heightens the level of proof required for her claims under the ADA and the FMLA, and (2) Plaintiff's proof fails to make a prima facie showing of retaliation in that Plaintiff's termination occurred before the Plaintiff filed her EEO charge and before she complained to Defendant's officials about any discrimination under the ADA. Plaintiff filed a response in opposition (Docket Entry No. 44), conceding her ADA retaliation claims, but contending that genuine issues of material fact render summary judgment

inappropriate with respect to her disability discrimination and FMLA retaliation claims. Defendant filed a reply (Docket Entry No. 49).

For the reasons stated herein, the Court concludes that: (1) Plaintiff has not presented direct evidence of either disability discrimination or FMLA retaliation with respect to Plaintiff's termination; (2) Defendant's reduction in force constitutes a legitimate non-discriminatory reason for Plaintiff's termination; and (3) Plaintiff has not offered any evidence to create a genuine issue of material fact as to whether Defendant's proffered explanation is untrue or pretextual. Accordingly, Defendant's motion for summary judgment (Docket Entry No. 43) should be granted.

### A. Findings of Fact[1]

In October 2008, Suncrest hired Plaintiff as a private duty Licensed Practical Nurse ("LPN"). (Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 4). Suncrest develops Medicare/Medicaid-certified home health agencies in the South and also develops partnerships with local health care communities to provide local hospitals and community health care facilities with quality medical care. Id. at ¶ 2.

In April 2011, Plaintiff joined Suncrest's Information Technology Department to assist Kaseigh Long, a clinical IT help desk specialist with Allscripts software. Id. at ¶¶ 5-6. Plaintiff and Long's duties involved clinical support for the company as Todd Pratt and Levi Nesmitt performed

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that, under the applicable law, there are not any material factual disputes. Thus, this section constitutes findings of fact.

2

the technical duties in that department. Id. at ¶ 7.

In May 2011, there was a merger of Suncrest and Omni Home Care that resulted in the creation of Suncrest Health Care. Id. at ¶ 3. Suncrest retained its local branches. Id. Also in May 2011, Gomez installed the Home Care Home Base software. Id. at ¶ 11. In August 2011, Suncrest decided to have one Director of IT, Leo Gomez. Id. at ¶¶ 8-9. Gomez divided his workers into two groups: clinical and technical. The technical workers in Gomez's unit were assigned duties for hardware and communication problems, and the clinical workers were assigned duties for application issues, specifically billing and computer software. Id. at ¶ 10.

Plaintiff was diagnosed with Lyme disease on April 28, 2011 and, therefore, had to have blood drawn weekly and was allowed to work from home one day per week. Id. at ¶ 13. Plaintiff's prior supervisor, Anderton, approved this arrangement and, after he became aware of Plaintiff's working from home, Gomez did not express any concerns about this arrangement. Id. at ¶¶ 14-15. In August 2011, Suncrest undertook an initial reduction in force. Id. at ¶ 32. In October 2011, Anderton and Della Mervin, Suncrest's Human Relations Director, approached Plaintiff to suggest using her FMLA benefits when she needed to take time off from work. Id. at ¶ 17. Based on their request, Plaintiff commenced using FMLA leave for her intermittent time away from work. Id. at ¶ 18. Plaintiff concedes that Suncrest never denied her any FMLA leave. Id. at ¶ 20.

By late 2011, Wally Dant, Suncrest's Chief Financial Officer, found the need for a second reduction in force. Id. at ¶¶ 32-33. The latter reduction in force commenced on February 2, 2012, and resulted in 40 terminations. Yet, Plaintiff insists that she was terminated on February 1. Id. at ¶ 34. According to the Defendant, Kiehl and Gomez identified employees for the reduction in force that included condensing its IT Department's three employees at Suncrest's Madison office where

3

Plaintiff worked. Id. at ¶¶ 36-39. Plaintiff, Long, and Blain each performed Help Desk duties. Id. at ¶ 39.

Defendant asserts that Long was hired to help at the clinical Help Desk in August 2009 and served as a de facto manager. Id. at ¶¶ 25-26. Although Plaintiff disputes that Long was a de facto supervisor, she concedes that Long was able to respond to both technical calls as well as clinical Help Desk calls. Id. at ¶ 27. Defendant also asserts that Brenda Dunn and Kari Byrne, Director of Clinical Support, added Blain, a Registered Nurse ("RN"), because she had personal knowledge of the Outcome and Assessment Information Set ("OASIS"). Id. at ¶ 28. OASIS groups data elements for comprehensive assessment of adult home health care and is used to measure patient outcomes. Id. at ¶ 29. Only RNs may conduct assessments for OASIS reporting. Id.

Gomez and Kiehl decided to terminate Plaintiff after a comparison of her skills and abilities to Long and Blain, who also worked for Suncrest's clinical group. Id. at ¶ 42. Plaintiff was never demoted, subjected to reduced hours or lower pay or negative evaluations, and was never suspended or placed on probation. Id. at ¶ 24. Plaintiff did not complain of any discrimination or retaliation until after her termination. Id. at ¶ 22.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873

F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see Routman</u>, 873 F.2d at 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has

> at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'")(quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Disability Discrimination Under the Americans with Disabilities Act

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA ensures that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff may prove that she was discriminated against based upon her disability either through direct or indirect evidence. Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1178 (6th Cir. 1996), abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012).

### a. Direct Evidence

Direct evidence is evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the adverse employment action." Erwin v. Potter, 79 Fed. App'x 893, 896 (6th Cir. 2003) (internal citation omitted). Thus, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 915 (6th Cir. 2013) (quoting Thompson v. City of Lansing, 410 Fed. App'x 922, 929 (6th Cir. 2011)).

The Sixth Circuit has stated that, where a plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Hedrick v. Western Reserve Care System, 355 F.3d 444, 452-53 (6th Cir. 2004) (citing Monette, 90

F.3d at 1186).

Here, Defendant's motion for summary judgment assumes, arguendo, that Plaintiff has satisfied the first two elements of a prima facie case of disability discrimination under the ADA, that she has a disability and was qualified to perform the essential functions of her job.

Plaintiff cites, as alleged direct evidence of disability discrimination, "her supervisor, Anderton, interrogating her regarding her job performance (keeping in mind she was one of the highest performing in her position), based solely upon her disability and making accusations that her reasonable accommodation was creating problems." (Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 11). Plaintiff does not provide any citation to the record in support of this factual assertion.[2] Regardless, a review of Plaintiff's deposition testimony reflects that Plaintiff did not testify that Anderton stated her absences were causing "problems." Instead, Plaintiff's deposition testimony reflects only that Anderton told Plaintiff that the "appearance" of her not being at her desk was "raising flags and questions from the VPs of the company." (Docket Entry No. 44-1, Deposition of Leigh Ann Raney at 17-18).

Yet, it is undisputed that Plaintiff was never demoted, subjected to reduced hours or lower pay or negative evaluations, and was never suspended or placed on probation. (Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 24). Thus, Plaintiff's adverse employment action consists solely of her termination.

Accordingly, the Court concludes that Anderton's alleged statements regarding the

---

[2]The Court notes that, although Plaintiff provides citations to the record throughout the "facts" section of her response in opposition to Defendant's motion for summary judgment (Docket Entry No. 44), Plaintiff does not provide any citation to the record for the conclusory factual assertions contained in the "argument" section of her response. The Court need consider only the those facts that are properly supported by citations to the record. Fed. R. Civ. P. 56(c).

12

appearance created by Plaintiff's absence do not constitute direct evidence of disability discrimination with respect to Plaintiff's termination. See, e.g., Lovell v. Champion Car Wash, LLC, 969 F. Supp.2d 945 (M.D. Tenn. 2013) (concluding that statements that plaintiff was being terminated for medical reasons, and that his medical needs could not be accommodated at the car wash, constituted direct evidence of disability discrimination).

### b. Indirect Evidence

Where a plaintiff seeks to establish discrimination through indirect evidence, courts apply the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). Thus, Plaintiff must first establish a prima facie case of discrimination by showing that:

> (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

Whitfield v. Tennessee, 639 F.3d at 253, 258-59 (6th Cir. 2011) (quoting Macy v. Hopkins County School Board of Education, 484 F.3d 357, 365 (6th Cir. 2007)).

In addition, because Plaintiff's position was terminated, along with that of approximately 40 other employees, as part of a reduction in force ("RIF") (Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 33-34, 38-39, 45), Plaintiff must also provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Geiger v. Tower Automotive, 579 F.3d 614, 623 (6th Cir. 2009). This additional showing can be met by demonstrating "that a comparable

non-protected person was treated better." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998). Thus, Plaintiff must demonstrate that she is "similarly-situated to the non-protected employee in all relevant respects." Id. at 353 (emphasis in original). Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." Id. at 352.

If Plaintiff makes such a showing, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. If Defendant articulates such a reason, then the burden shifts back to Plaintiff to prove that the Defendant's proffered explanation is untrue or pretextual. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49-42 (2003). Under this framework, Plaintiff retains the ultimate burden of persuasion at all times.

As an initial matter, it is undisputed that Plaintiff's clinical IT help desk position was not filled by a new employee. (Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 47). Regardless, Plaintiff contends that she was "as qualified if not more qualified to perform the job duties than Kaseigh Long," whom Plaintiff asserts she was "outperforming." (Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 14).[3] Again, Plaintiff does not provide any citation to the record to support this conclusory assertion.

To be sure, a single Spiceworks productivity report reflects that, during an unspecified two-week period of time, Plaintiff processed the most tickets related to the Madison, Tennessee IT department. (Docket Entry No. 44-4, Deposition of Leandro Gomez Ball, Jr. at 27-31). Yet, "some

---

[3]Plaintiff concedes that Blain is not comparable to Plaintiff. See Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 17.

tickets take a shorter time; some tickets take a longer time." Id. at 31.

Moreover, Plaintiff concedes that Long had two more years of experience than Plaintiff and that Long was able to respond to both technical calls as well as clinical help desk calls. Id. at ¶¶ 25-27; see also Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 14. In addition, although Plaintiff's Response to Defendant's motion for summary judgment disputes that Long served as de facto manager, Plaintiff concedes in her deposition that Long was the lead clinical help desk specialist. Specifically, Plaintiff testified that:

> Q: Okay. Was she your supervisor, Kasiegh Long?
>
> A. She did oversee me. Yes.
>
> Q: Now, did you consider Ms. Long your direct supervisor or Mr. Anderton your direct supervisor?
>
> A: Mr. Anderton was my direct supervisor. He was the IT director. Kasiegh was more of a - - I guess you could say more of a manager. Not director, more but manager. And I would report to her more on a daily basis than I did Richard due to the fact that we were handling clinical issues with the clinical software, clinical calls. And Richard, the IT director, and Todd Pratt, they were handling more - - they would handle more the networking issues, and me and Kasiegh were tackling the clinical issues.
>
> Q: So is it fair to say that she was the lead in that department?
>
> A: Yes.

(Docket Entry No. 44-1, Deposition of Leigh Ann Raney at 12).

In addition, although Plaintiff contends that Long considered Plaintiff an equal because they did the same job and filled in for each other when one was absent, Long specifically testified that:

> Q: So would [Plaintiff] have been considered an assistant help desk administrator or - -

15

> A: I looked - - I mean, I didn't - - I've always hated titles. And I've always - - I told her that, you know, I'd like to look at us as equals and that - - you know, because if I'm out or if I'm on holiday or, Lord forbid, if something happened to me, she would be doing my job so to me that would maker her an equal. I don't know if that makes sense.

(Docket Entry No. 44-2, Deposition of at Ksaeigh Long 33).

Thus, the Court concludes that Plaintiff is not similarly situated with Long in all relevant respects and Plaintiff has, therefore, not provided any additional direct, circumstantial, or statistical evidence that creates a genuine issue of material fact as to whether the employer singled out the plaintiff for discharge for impermissible reasons.

Moreover, even if the Court were to assume that Plaintiff has met the heightened standard and established a <u>prima facie</u> case of disability discrimination, the Court also concludes that Defendant has articulated a legitimate, non-discriminatory reason for its employment action and Plaintiff has not proved that Defendant's proffered explanation is untrue or pretextual.

Defendant's reduction in force constitutes a legitimate non-discriminatory reason for Plaintiff's termination. See <u>Barnes v. GenCorp. Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990) ("When work force reductions by the employer are a factor in the decision, the most common legitimate reasons for the discharge are the work force reductions."). Thus, the burden shifts back to Plaintiff to show that the reason is untrue or pretextual. Specifically, Plaintiff must show that the proffered reasons: (1) had no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to motivate the action. See <u>Crane v. Monterey Mushroom, Inc.</u>, 910 F. Supp.2d 1032, 1049 (E.D. Tenn. 2012) (citing <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 883 (6th Cir. 1996)).

Here, it is undisputed that, in August 2011, Defendant effected an initial reduction in force

and, by late 2011, Wally Dant, Suncrest's Chief Financial Officer, found the need for a second reduction in force. (Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 32-33). The latter reduction in force commenced on February 2, 2012, and resulted in 40 terminations, including Plaintiff's termination. Id. at ¶ 34. Thus, Plaintiff cannot show that Defendant's proffered reason has no basis in fact.

Instead, Plaintiff contends that Defendant's proffered reason is pretextual because the only difference between Plaintiff and Long was that Plaintiff was disabled and used FMLA leave. As discussed supra, the Court concludes that Plaintiff and Long are not similarly situated in all relevant respects. Plaintiff also contends that Todd Pratt's sole job function was technical side telephone calls. Thus, had Long been terminated instead of Plaintiff, technical calls could still be handled by Pratt. Yet, courts "do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Brooks v. Davey Tree Expert Co., 478 Fed. App'x 934, 943 (6th Cir. 2012) (citing Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006)). Here, Kiehl testified that he and Leo Gomez "had long conversations going back and forth reviewing strengths and weaknesses of various employees." (Docket Entry No. 44-7, Deposition of John Kiehl at 20). The mere fact that Pratt could handle technical calls does not render Defendant's adverse employment action unreasonable.

As such, the Court concludes that Plaintiff has not offered any evidence that creates a genuine issue of material fact as to whether Defendant's proffered explanation is untrue or pretextual. Accordingly, Defendant's motion for summary judgment should be granted as to Plaintiff's disability discrimination claim under the ADA.

### 2. Retaliation Under the Family and Medical Leave Act Claim[4]

Under the FMLA, Plaintiff must prove: (1) exercise of a protected right under the FMLA; (2) her exercise of those rights was known to Defendant; (3) she suffered an adverse employment decision; and (4) a causal connection between her protected activity and the adverse employment action. See Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001). In addition, courts apply the McDonnell Douglas burden-shifting test, discussed supra, to retaliation claims under the FMLA. See Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006).

Here, Plaintiff again cites to the conversation she had with her supervisor, Anderton, regarding the perception created by Plaintiff's absences. For the reasons discussed supra, the Court concludes that Anderton's alleged statements regarding the appearance created by Plaintiff's absence do not constitute direct evidence of retaliation with respect to Plaintiff's termination.

Yet, Plaintiff may also prove her FMLA retaliation claim using indirect evidence. To that end, Plaintiff contends, as proof of a causal link between her need for FMLA leave and her termination, that: (1) she was terminated four months after being granted FMLA leave; (2) she was the only IT employee with a known disability or on FMLA leave; and (3) the only difference between Plaintiff, Blain, and Long was that Plaintiff had a disability and used leave under the FMLA. Again, Plaintiff provides no citations to the record in support of these assertions.

---

[4]The Court notes that, in its motion for summary judgment, Defendant contends that Plaintiff cannot show that Defendant interfered with her benefits or rights under the FMLA. See Docket Entry No. 43-2, Memorandum in Support of Defendant's Motion for Summary Judgment at 10. A review of the record reflects that Plaintiff does not assert a claim for FMLA interference in her amended complaint (Docket Entry No. 5). Moreover, it is undisputed that Defendant never denied Plaintiff any benefits to which she was entitled, or leave requested, under the FMLA. See Docket Entry No. 45, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 19-20. Accordingly, the Court concludes that Plaintiff cannot establish a prima facie case of FMLA interference. See Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014).

First, "Plaintiff cannot establish a prima facie case of retaliation solely on the basis of temporal proximity. She must offer some other indicia of retaliatory conduct." Cleveland v. Southern Disposal Waste Connections, 491 Fed. App'x 698, 706 (6th Cir. 2012) (citing Parks v. City of Chattanooga, 74 Fed. App'x 432, 438 (6th Cir. 2003) ("Temporal proximity . . . does not support an inference of retaliatory discrimination, particularly where . . . [an employer's decision] is readily explainable on non-retaliatory grounds that have not been shown to be pretextual.")).

Second, even if the Court were to assume that Plaintiff has established a prima facie case of FMLA retaliation, the Court still must apply the McDonnell Douglas burden-shifting test. Here, Plaintiff does not provide any additional evidence beyond that already presented in the context of her ADA discrimination claim to demonstrate that Defendant's reduction in force is pretextual. See Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 18-20. Thus, for the reasons discussed supra, the Court concludes that Plaintiff has not offered any evidence that creates a genuine issue of material fact as to whether Defendant's proffered explanation for its adverse employment action is untrue or pretextual. Accordingly, Defendant's motion for summary judgment should be granted as to Plaintiff's FMLA retaliation claim.

### 3. Retaliation Under the Americans with Disabilities Act

In her Response to Defendant's motion for summary judgment, Plaintiff concedes her ADA retaliation claim. See Docket Entry No. 44, Plaintiff's Response to Defendant's Motion for Summary Judgment at 1. Accordingly, the Court concludes that Defendant's motion for summary judgment should be granted with respect to Plaintiff's retaliation claim under the ADA.

### C. Conclusion

Accordingly, the Court concludes that Defendant's motion for summary judgment (Docket

Entry No. 43) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 9th day of July, 2015.

_____
WILLIAM J. HAYNES, JR.,
Senior United States District Judge